JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
AREPET EXPRESS, LLC

### DEFENDANTS
THE UNITED STATES SMALL BUSINESS ADMINISTRATION
(see next page)

**(b)** County of Residence of First Listed Plaintiff    HIDALGO
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    WASHINGTON
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
FROST BROWN TODD LLC
4400 POST OAK PARKWAY, STE. 2850
HOUSTON, TEXAS  77027        (713) 590-9300

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☒ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Personal Injury | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** ☐ 370 Other Fraud | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 2201, 2202; 5 U.S.C. § 706(2)(A) and (C); 5 U.S.C. § 706(2)(A); 5 U.S.C. § 705

Brief description of cause:
Appeal of SBA's Office of Hearings and Appeals' decision

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    6/21/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

PAGE 2
CONTINUATION OF CIVIL COVER SHEET
**Arepet Express LLC v. The United States Small Business Administration, et al**

**DEFENDANTS**

THE UNITED STATES SMALL BUSINESS ADMINISTRATION

ISABELLA CASILLAS GUZMAN, In Her Official Capacity as Administrator of the Small Business Administration

JANET YELLEN, In Her Official Capacity as United States Secretary of the Treasury

THE UNITED STATES OF AMERICA,

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| AREPET EXPRESS, LLC, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CASE No. _____ |
| | § | |
| THE UNITED STATES SMALL BUSINESS | § | |
| ADMINISTRATION, ISABELLA | § | |
| CASILLAS GUZMAN, In Her Official | § | |
| Capacity as Administrator of the Small | § | |
| Business Administration, JANET YELLEN, | § | |
| In Her Official Capacity as United States | § | |
| Secretary of the Treasury, and THE | § | |
| UNITED STATES OF AMERICA, | § | |
|     Defendants. | § | |

## ORIGINAL COMPLAINT OF PLAINTIFF AREPET EXPRESS, LLC

TO THE HONORABLE U.S. DISTRICT COURT:

Plaintiff Arepet Express, LLC ("Arepet") comes before this Court and respectfully asks this Court to issue a permanent injunction, grant declaratory relief, and hold unlawful and set aside the agency actions of Defendants the United States Small Business Administration ("SBA"); Isabella Casillas Guzman, in her official capacity as Administrator of the SBA; Janet Yellen, in her official capacity as United States Secretary of the Treasury; and the United States of America. In support, Arepet alleges as follows:

## I.
## INTRODUCTION

1.     On March 27, 2020, to assist small businesses in the wake of the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), which established the Paycheck Protection Program ("PPP"). *Coronavirus Aid, Relief, and Economic Security Act*, Pub. L. No. 116–136, 134 Stat. 281 (March 27, 2020), *codified at* 15 U.S.C. § 9001, *et seq*.

2.      The PPP provides loans through the SBA to certain small businesses who have encountered hardships due to the pandemic (referred to as "PPP Loans") and offers full forgiveness of those loans if the proceeds are properly expended.  The PPP is implemented by the SBA with support from the Department of Treasury.

3.      The primary purposes of the CARES Act are to "keep[] American workers paid and employed," and to "assist small businesses nationwide adversely impacted by the COVID-19 emergency." 15 U.S.C. Ch. 16, Subchapter I; *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20811 (April 15, 2020). Arepet is one of those small businesses that the CARES Act was created to support. Arepet was established in 2011 and has at all times been located in the backyard of this Court, in McAllen, Texas.  It is a logistics company that transports products throughout Texas, Oklahoma, and New Mexico, that are vital to the functioning of other industries. When the COVID-19 pandemic began, Arepet employed over 100 individuals, both independent contractors and W-2 employees, and maintained a fleet of approximately 115 trucks and pneumatic trailers.

4.      Like many other small businesses, Arepet was hit hard financially by the COVID-19 pandemic and struggled to keep its workers paid and its doors open. Arepet applied for a PPP Loan based on Arepet's substantial financial concerns and the belief that any funds received would be wholly forgiven.

5.      SBA awarded Arepet a PPP Loan in the amount of $1,360,000 on April 10, 2020. Arepet would not have been able to operate its business during this time but for receiving the PPP Loan proceeds. In April 2021, Arepet applied for full forgiveness of the PPP Loan in accordance with SBA regulations.

6.      The SBA, however, denied full forgiveness of the PPP Loan, and now rendered Arepet "ineligible" for a portion of the PPP Loan. Arepet was asked to pay back the proceeds the SBA disbursed and Arepet utilized in accordance with the SBA's regulations.

7.      Specifically, the SBA determined that Arepet was "ineligible" for $539,102.75 of the PPP Loan proceeds because "It appears the original loan calculation included payments to 1099 independent contractors." The decision was upheld by the SBA's Office of Hearings and Appeals. Arepet felt as though it was the victim of a bait and switch by the very hands that were to protect it. The SBA representative and Arepet's lender, who aided Arepet in the PPP Loan process, represented to Arepet that independent contractor compensation *was an eligible payroll cost*.  This was further bolstered by the language of the SBA PPP Loan application form and the CARES Act. In addition, Arepet did not use a single penny of PPP Loan proceeds to pay independent contractors.

8.      Arepet followed each and every regulation in effect at the time of its loan application and relied on the guidance of its lender and the SBA.  Notwithstanding, Arepet is now required to pay back $539,102.75 of the PPP Loan proceeds *with interest*.

9.      The Defendants' acts are arbitrary, unlawful, and unjust and have caused a well-established small business in the McAllen community significant harm.  To add insult to injury, the government's demand that Arepet repay over a half a million dollars stems from Arepet's participation in a government program that was conceived to support companies like Arepet.  Accordingly, Arepet respectfully requests this Court issue a declaration that the agency actions were arbitrary, capricious, unlawful, and an abuse of discretion; vacatur of the underlying agency action; and full forgiveness of Arepet's PPP Loan.

3

## II.
## PARTIES

10.    Plaintiff is a limited liability company duly organized in Texas and does so conduct business in Texas. Arepet's principal place of business is located at 3900 N 10th Street, Suite 1010, McAllen, Texas 78501, and each of Arepet's members are domiciled in Texas.

11.    Defendant SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633, *et seq.* The SBA maintains a district office at 2422 East Tyler Avenue, Suite E, Harlingen, Texas 78550, which is within the McAllen Division of the United States District Court for the Southern District of Texas.  The SBA administers the PPP pursuant to the CARES Act.

12.    Defendant Isabella Casillas Guzman is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity as Administrator. Guzman is a proper defendant in Administrative Procedure Act ("APA") challenges, as asserted herein, pursuant to 15 U.S.C. § 634(b) because Guzman is the officer with final authority for administering the PPP for the SBA.

13.    Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is sued in her official capacity. Yellen assists in the administration of the PPP, and funds supporting the PPP are appropriated out of amounts in the Treasury, *see* 15 U.S.C. § 9006(a).

14.    Defendant the United States of America is a proper defendant in APA challenges, as asserted herein, pursuant to 5 U.S.C. § 702.

## III.
## JURISDICTION AND VENUE

15.    This is a civil action over which this Court has subject matter jurisdiction of this action by virtue of 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1346(a)(2) (civil action against the United States); 28 U.S.C. § 2201 (authorizing declaratory relief); 28 U.S.C. § 2202 (authorizing injunctive relief); and 5 U.S.C. § 702 (judicial review of agency action). SBA regulations likewise

4

provide for federal district court review of a decision of the SBA's Office of Hearings and Appeals pursuant to 13 C.F.R. § 134.1211(g).

16.     The SBA's adoption of the Independent Contractor Rule and the agency's denial of full forgiveness to Arepet are final agency actions pursuant to 5 U.S.C. § 704 and 13 C.F.R. § 134.1211(c)(3), which this Court has authority to review pursuant to 5 U.S.C. § 702.

17.     Arepet is a citizen of the State of Texas and each of its members are citizens of Texas.

18.     This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in the State of Texas and have engaged in the conduct alleged herein in Texas, targeted to Texas residents, businesses, and/or interests.

19.     Arepet has Article III standing because the SBA's denial of full loan forgiveness has caused a concrete injury which is redressable by this Court by granting Arepet the relief requested herein.

20.     No other action, civil or criminal, is pending in any state court involving Arepet regarding the activities and events stated herein.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (e) because a substantial part of the events giving rise to this action have occurred and will continue to occur in the Southern District of Texas within the McAllen Division, and the SBA and Treasury Department operate within this Court's judicial district.

## IV.
## STATEMENT OF FACTS

**A.      The CARES Act and the Paycheck Protection Program**

22.     Congress passed the CARES Act on March 27, 2020, to provide financial assistance to the most vulnerable of businesses hit by the COVID-19 pandemic – small businesses.

23.     As part of the CARES Act, $349 billion was allocated to the first round or "first draw" of the PPP to fund government-backed PPP Loans to help small businesses retain employees.  *See* CARES Act § 1102, 134 Stat. at 293.  Congress then appropriated an additional $310 billion for first draw

5

loans in April 2020. *See Paycheck Protection Program and Health Care Enhancement Act* § 101, Pub. L. No. 116–139, 134 Stat. 620 (April 24, 2020). Later, in 2021, Congress appropriated another $147 billion for "second draw" loans, which had narrower requirements. *Consolidated Appropriations Act*, Pub. L. No. 116–260, § 323, 134 Stat. 1182, 2018–19 (2020); *see id.* § 311, 134 Stat. at 2001–07. This Complaint concerns a "first draw" PPP Loan, but the relief requested would be applicable to all PPP Loans.

24.     Congress charged the SBA with "modify[ing] existing loan programs and establish[ing] a new loan program to assist small businesses nationwide." *Business Loan Program Temporary Changes; Paycheck Protection Program*, 85 Fed. Reg. 20811, 20811 (April 15, 2020). It also directed that the SBA "guarantee" PPP loans from private lending institutions to eligible small businesses. *DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 745 (6th Cir. 2020).

25.     The CARES Act provides that "***any business concern*** . . . shall be eligible to receive a covered loan," as long as the business concern does not employ more than a specific number of employees (for first draw loans, 500 employees). 15 U.S.C. § 636(a)(36)(D)(i) (emphasis added); *see id.* § 636(a)(36)(D)(i)(I)–(II). By this language, the CARES Act mandates a "broad grant of eligibility." *DV Diamond Club*, 960 F.3d at 747.

26.     In its haste to get money into the hands of small business owners, the PPP (a) placed the impetus on borrowers and lenders participating in the PPP to certify eligibility for the program and loan calculations in the midst of constantly changing guidance; and (b) as such, SBA guidance has consistently provided that "Borrowers and lenders may rely on the laws, rules, and guidance available ***at the time of the relevant application***." SBA FAQ #17 (April 6, 2020) (emphasis added).[1]

27.     The CARES Act instructs borrowers and lenders to calculate the "maximum loan amount" – and, in turn, the amount eligible for loan forgiveness – using a business's "payroll costs." Pub. L. No.

---

[1]     Available at https://www.sba.gov/sites/default/files/2020-04/Final%20PPP%20FAQs.pdf.

116–136 §§ 1102, 1006, codified at 15 U.S.C. § 636(a)(36)(E)(i)(I)(aa), 636(a)(36)(J)(iii)(I). "[P]ayroll costs" are defined to include "the sum of payments of *any compensation to* or income of a sole proprietor or *independent contractor* that is a wage, commission, income, net earnings from self-employment, or similar compensation," as long as it is not more than $100,000 in one year. *Id.* § 636(a)(36)(A)(viii)(I)(bb) (emphasis added).

28.    The CARES Act provides that PPP Loans will be forgiven if the borrowers use the loan proceeds for eligible expenses like payroll costs. The CARES Act *does not* provide that independent contractor compensation is to be excluded from calculation of the PPP Loan forgiveness amount. *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II).

29.    To the contrary, the CARES Act provides that, under the PPP, when "evaluating the eligibility of a borrower" for a PPP Loan, the assigned lender "shall consider whether the borrower . . . had employees for whom the borrower paid salaries and payroll taxes; or [] *paid independent contractors, as reported on a Form 1099-MISC*." 15 U.S.C. § 636(a)(36)(F)(ii)(II)(bb) (emphasis added).

30.    The CARES Act sets forth types of compensation *excluded* from the definition of payroll costs, but does not list compensation paid to independent contractors. *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II).

31.    In fact, the SBA's own application form ("SBA Form 2483") required Arepet to certify that it "had employees for whom it paid salaries and payroll taxes *or paid independent contractors, as reported on Form(s) 1099-MISC*."

**B.    The April 15, 2020 Interim Final Rule**

32.    Contrary to the CARES Act and its own Form 2483, the SBA issued an Interim Final Rule ("IFR") on April 15, 2020 that contained this Q&A:

> h. Do independent contractors count as employees for purposes of PPP loan calculations?

> No, independent contractors have the ability to apply for a PPP loan on their own so they do not count for purposes of a borrower's PPP loan calculation.

85 Fed. Reg. at 20813; *see also id.* at 20814 (same, with respect to loan forgiveness) (hereinafter, the "Independent Contractor Rule").

33.    The only reason the agency provided for the Independent Contractor Rule was that independent contractors have the ability to apply for a PPP loan on their own.  But notably, independent contractors could not begin applying until April 10, 2020.[2]

34.    The IFR became effective April 15, 2020. 85 Fed. Reg. at 20811.

**C.    Arepet's PPP Loan and SBA's Denial of PPP Loan Forgiveness**

35.    Soon after members of Arepet heard about the CARES Act and PPP, they decided to apply for a first draw PPP Loan to ensure Arepet could continue to employ and pay the individuals that worked so hard to keep Arepet in business.

36.    It was important to Arepet to learn about the PPP. On April 2, 2020, Claudia Contreras, Arepet Group Human Resources Director, and Lucinda Alejo, Arepet Chief Financial Officer, participated in an SBA conference call on the CARES Act, hosted by the Rio Grande Valley Hispanic Chamber of Commerce.

37.    During the call, an SBA representative was asked whether applicants should include independent contractor compensation in their PPP Loan amount calculation.  The SBA representative responded affirmatively and encouraged the applicants to include such compensation.

38.    Arepet's lender, Texas National Bank (the "Bank") had the same understanding of the CARES Act.  On April 4, 2020, the Bank confirmed via email that it was proper to include 1099 information in the PPP Loan amount calculation.

---

[2]    *See* https://home.treasury.gov/system/files/136/PPP%20--%20Overview.pdf.

8

39.    As stated, the SBA's own Form 2483 reinforced this approach. It required Arepet to certify that it "had employees for whom it paid salaries and payroll taxes *or paid independent contractors, as reported on Form(s) 1099-MISC*." It also required Arepet to certify that it was eligible to receive a loan "under the rules in effect at the time of this application." And the CARES Act itself provided that borrowers could include in payroll costs "any compensation to or income of a sole proprietor or independent contractor." 15 U.S.C. § 636(a)(36)(A)(viii)(I)(bb). The IFR and Independent Contractor Rule were not yet effective at the time of Arepet's application.

40.    On April 4, 2020, Arepet submitted its PPP Loan application to the Bank for loan proceeds of $1,360,000, which included independent contractor compensation in its calculation of the PPP Loan amount.  Arepet's decision to include independent contractor compensation was based on the guidance of Congress, the SBA, and the Bank.  The Bank submitted Arepet's application to the SBA for approval.

41.    The SBA approved the full amount requested.  On April 10, 2020, in McAllen, Texas, Ruben Garza, President of Arepet, signed a Promissory Note for the full PPP Loan amount requested.

42.    On April 13, 2020, TNB deposited the $1,360,000 of loan proceeds into Arepet's business checking account.

43.    The Independent Contractor Rule became effective two days after the loan proceeds were deposited. Neither the Bank nor an SBA representative advised Arepet to return any part of the PPP Loan. Further, there was no guidance from the SBA or Treasury that would have alerted Arepet to return any part of the PPP Loan. However, out of an abundance of caution, Arepet decided not to use the PPP Loan proceeds for independent contractor paychecks. Beginning with its first post-Loan payroll of April 17, 2020, Arepet used the PPP Loan proceeds for W-2 employee compensation and other approved non-payroll expenses *only*.

9

44.     Early in the PPP, borrowers had only 8 weeks to expend the loan proceeds (known as the "covered period").  Staying true to Congress' "core purpose" of keeping workers on payroll, the SBA decided borrowers were permitted to use no more than 25% of the PPP Loan proceeds on non-payroll costs such as rent, utilities, and mortgage interest. 85 Fed. Reg. at 20813.

45.     On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act ("PPPFA"), which gave borrowers the option of extending the covered period from 8 to 24 weeks. The PPPFA also permitted borrowers to spend up to 40% on non-payroll expenses.  *See Paycheck Protection Program Flexibility Act of 2020*, Pub. L. No. 116–142, § 3, 134 Stat. 641 (June 5, 2020). During its 24-week covered period from April 17, 2020, to September 24, 2020, Arepet utilized 60% of the PPP funds for payroll expenses (with *none* of the PPP Loan proceeds being used to pay independent contractors) and 40% for non-payroll expenses.

46.     From November 6, 2020, to April 7, 2021, CFO Alejo worked with a TNB officer to complete all required forms and upload all supporting documentation for Arepet's PPP Loan forgiveness application.

47.     Continuing to abide by SBA guidelines, Arepet calculated a requested forgiveness amount of $1,233,893.75. TNB filed Arepet's PPP Loan forgiveness application with the SBA on April 15, 2021. In so doing, TNB requested that the SBA forgive the $1,233,893.75 amount.

48.     After a series of requests for production of documents, on November 26, 2021, the SBA issued a final loan decision granting partial forgiveness to Arepet in the amount of $694,791.00, thus requiring Arepet to pay back $665,209.00 with interest.

49.     Pursuant to 13 C.F.R. sections 134.102(w) and 134.1201, Arepet exhausted its administrative remedies by filing an appeal of the SBA's partial forgiveness decision with the SBA's Office of Hearings and Appeals ("OHA") on December 27, 2021.

50.     On April 22, 2022, the OHA issued an "initial decision" upholding the SBA's decision to "forgive[] all of the PPP loan except for any expenses related to the utilization of independent contractors."

51.     The OHA's initial decision became an appealable, final decision 30 calendar days later, on May 22, 2022.  *See* 13 C.F.R. § 134.1211(c)(3).

**V.**
**<u>COUNT ONE</u>**

**Claim for Declaratory Judgment and Permanent Injunction:**
**Independent Contractor Rule is Arbitrary and Capricious and Contrary to Law**
**28 U.S.C. §§ 2201, 2202**

52.     Arepet incorporates Paragraphs 1 through 51 as if set forth verbatim herein.

53.     On April 15, 2020, as part of the IFR, the SBA set forth the Independent Contractor Rule. This Rule provided that, because "independent contractors have the ability to apply for a PPP loan on their own," they "do not count for purposes of a borrower's PPP loan calculation."  85 Fed. Reg. at 20813.

54.     The SBA has continued to issue FAQs and other guidance consistent with this Rule.  *See, e.g.*, *SBA Procedural Notice*, Control No. 5000-20078 (Jan. 15, 2021) (issuing guidance that if a borrower "mistakenly included payments to an independent contractor in its calculation of payroll costs on its PPP Borrower Application Form" and as a result, the "loan amount approved for the borrower exceeded the borrower's correct maximum loan amount," then forgiveness "will be denied for the ineligible portion and the borrower must begin making payments on the remaining loan amount"); *Small Business Administration, Paycheck Protection Program Loans: FAQs* (Jan. 29, 2021) (FAQ on SBA website: "Any amounts that an eligible borrower has paid to an independent contractor or sole proprietor should be excluded from the eligible business's payroll costs.").[3]

---

[3]     Available at https://www.sba.gov/sites/default/files/2021-01/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf.

11

55.     However, the Independent Contractor Rule and subsequent agency guidance contravene the plain language and purpose of the CARES Act.

56.     The CARES Act makes clear that PPP Loans are meant to keep *all* American workers paid, including independent contractors, and not just W-2 employees.

57.     The CARES Act instructs borrowers and lenders to calculate the "maximum loan amount" – and, in turn, the amount eligible for loan forgiveness – using a business's "payroll costs."  Pub. L. No. 116–136 §§ 1102, 1006, *codified at* 15 U.S.C. § 636(a)(36)(E)(i)(I)(aa), 636(a)(36)(J)(iii)(I).

58.     "[P]ayroll costs" are defined to include "the sum of payments of ***any compensation to*** or income of ***a[n]*** . . . ***independent contractor*** that is a wage, commission, income, net earnings from self-employment, or similar compensation," as long as it is not more than $100,000 in one year.  § 636(a)(36)(A)(viii)(I)(bb) (emphasis added).

59.     The CARES Act also provides that, when "evaluating the eligibility of a borrower" for a PPP Loan, the assigned lender "shall consider whether the borrower . . . had employees for whom the borrower paid salaries and payroll taxes; ***or*** [] ***paid independent contractors, as reported on a Form 1099-MISC***."  15 U.S.C. § 636(a)(36)(F)(ii)(II)(bb) (emphasis added).

*60.*     The CARES Act lists exclusions to the definition of payroll costs – including compensation to workers outside of the United States and compensation in excess of $100,000 per year – but it *does not* list compensation paid to independent contractors as an exclusion.  *See* 15 U.S.C. § 636(a)(36)(A)(viii)(II).  Congress's choice not to include independent contractor compensation as an exclusion was clearly a deliberate one.  *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (explaining that pursuant to the statutory construction canon *expressio unius est exclusio alterius*, items expressed in a statute that are "members of an associated group or series" "justify[] the inference that items not mentioned were excluded by deliberate choice, not inadvertence").

12

61.     The main purposes of the CARES Act are to "keep[] American workers paid and employed," 15 U.S.C. Ch. 16, Subchapter I, and to "assist small businesses nationwide adversely impacted by the COVID-19 emergency," 85 Fed. Reg. at 20811. The CARES Act does not delineate between independent contractors and other types of "American workers."

62.     The statutory history and the context of the CARES Act strongly support that the CARES Act mandates a "broad grant of eligibility," *DV Diamond Club,* 960 F.3d at 747, applying to *every* business concern of the specified size, no matter the type of workers employed.

63.     The APA authorizes this Court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, . . . or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

64.     The Independent Contractor Rule violates the CARES Act's language and purpose by impermissibly imposing a prerequisite to loan forgiveness that is not contemplated by the Act itself.

65.     In addition, the IFR itself is inconsistent. "Illogic and internal inconsistency are characteristic of arbitrary and unreasonable agency action." *Sw. Elec. Power Co. v. United States Env't Prot. Agency*, 920 F.3d 999, 1021 (5th Cir. 2019) (quoting *Chamber of Com. of United States of Am. v. United States Dep't of Lab.*, 885 F.3d 360, 382 (5th Cir. 2018)). Under the heading "What do borrowers need to  know and do?" and subheading "Am I eligible?" the IFR explains that an entity is eligible for a PPP Loan if it "paid independent contractors, as reported on a Form 1099-MISC."  85 Fed. Reg. at 20811. Under the heading "What certifications need to be made?" the IFR explains that the borrower must certify that it "had employees for whom it paid salaries and payroll taxes ***or paid independent contractors, as reported on a Form 1099-MISC***." *Id.* at 20813 (emphasis added).

66.     Moreover, this Court is not required to give controlling weight to the SBA's interpretation of the CARES Act because it is arbitrary, capricious, and manifestly contrary to the statute. *Transitional*

13

*Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*, 220 F.3d 427, 430 (5th Cir. 2000) (quoting *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)).

67.     Incorporating the foregoing, Arepet respectfully requests that this Court to declare the following: (a) the SBA committed an error of law in the case at hand by excluding independent contractor pay from the calculation of Arepet's maximum loan amount and granting only partial forgiveness; and (b) the SBA's Independent Contractor Rule – first set forth in the April 15, 2020 IFR – is arbitrary, capricious, and contrary to law.

68.     Arepet seeks a permanent injunction barring Defendants from applying the Independent Contractor Rule to Arepet's loan forgiveness application.

69.     Arepet also respectfully requests that this Court issue a permanent, nationwide injunction barring Defendants from applying the Independent Contractor Rule to *any* loan forgiveness request, but especially those applicants who applied for a PPP Loan before the effective date of the Independent Contractor Rule, April 15, 2020.

## VI.
## COUNT TWO

### Claim to Set Aside Agency Action That is Arbitrary, Capricious, Contrary to Law, and Exceeds Statutory Authority
### 5 U.S.C. § 706(2)(A) and (C)

70.     Arepet incorporates Paragraphs 1 through 69 as if set forth verbatim herein.

71.     The APA authorizes this Court to "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, . . . or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A), (C).

72.     The Independent Contractor Rule is arbitrary, capricious, and contrary to law for all of the reasons set forth under Count One.

14

73.     In addition, the SBA – by its OHA decision in this case and its promulgation of the Independent Contractor Rule – has acted contrary to law and has exceeded its statutory authority retroactively applying the Independent Contractor Rule to Arepet's PPP Loan application.

74.     Federal regulations do not and cannot apply retroactively unless Congress has authorized that step explicitly. *Jahn v. 1-800-Flowers.com, Inc.,* 284 F.3d 807, 810 (7th Cir. 2002). This is due in part to the presumption against retroactively applying laws. The Supreme Court has stated that, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly . . ." *Landgraf v. USI Film Products,* 511 U.S. 244, 265 (1994).  For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Id.* (citing *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 855 (1990)).  The intent of the presumption is to "avoid unnecessary *post hoc* changes to legal rules on which parties relied in shaping their primary conduct."  *Austria v. Altmann,* 541 U.S. 677, 696 (2004).

75.     By its terms, the IFR in which the Independent Contractor Rule appears is "effective April 15, 2020."  85 Fed. Reg. at 20811.

76.     The SBA issued guidance on April 6, 2020, that borrowers and lenders "may rely on the laws, rules, and guidance available ***at the time of the relevant application***." SBA FAQ #17 (April 6, 2020).

77.     Despite this, Defendants impermissibly applied the Independent Contractor Rule retroactively to Arepet's PPP Loan application by denying full forgiveness on the grounds that Arepet was not eligible for the full loan amount at the time of the application.

78.     In addition, Arepet *did not* use any of the PPP Loan proceeds to pay independent contractors. Thus, the purpose the Rule was trying to advance was not contravened.

79.     Arepet respectfully requests a declaration that (a) the Independent Contractor Rule is not applicable to Arepet's PPP loan forgiveness request; (b) Defendants' refusal to forgive Arepet's PPP

loan forgiveness exceeds the Defendants' statutory authority and violates the CARES Act and APA; (c) Defendants' retroactive application of the Independent Contractor Rule is contrary to law and exceeds Defendant's statutory authority; and (d) Arepet's PPP loan should be fully forgiven.

80.      For all of these reasons, Arepet also asks this Court to vacate and set aside the OHA's decision upholding the SBA's grant of partial forgiveness and remand to the SBA with instructions to fully forgive Arepet's PPP Loan.

### VII.
### COUNT THREE

**Claim to Set Aside Agency Action that is Arbitrary and Capricious
and an Abuse of Discretion
5 U.S.C. § 706(2)(A)**

81.      Arepet incorporates Paragraphs 1 through 80 as if set forth verbatim herein.

82.      The Independent Contractor Rule is arbitrary, capricious, and an abuse of discretion for two additional reasons. First, the SBA fell painfully short of sufficiently explaining its rationale for the Independent Contractor Rule, and the brief reasoning it *did* provide in the IFR is not applicable to this case. Second, in setting forth the Independent Contractor Rule, the agency failed to follow proper notice-and-comment procedures pursuant to the APA.

83.      **First**, for an agency action to be upheld by the federal courts, the agency must have "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)). As part of this "satisfactory explanation," the agency must articulate a "rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (quoting *State Farm*, 463 U.S. at 43).

84.      The SBA failed to sufficiently explain why it set forth and adopted the Independent Contractor Rule in the IFR.

16

85.     At the time of Arepet's application, independent contractor wages were included in the calculation of the maximum loan amount. The SBA's own application form asked borrowers to certify that certify that they "had employees for whom it paid salaries and payroll taxes *or paid independent contractors, as reported on Form(s) 1099-MISC*." Just before the Independent Contractor Rule was effective, an SBA representative advised Arepet to include independent contractor wages in its payroll calculation.

86.     Yet the SBA provided *one phrase* in support of its conception of the Independent Contractor Rule: "independent contractors have the ability to apply for a PPP loan on their own." 85 Fed. Reg. at 20813.

87.     However, independent contractors were *not* able to apply for PPP Loans until April 10, 2020. In addition, Arepet *did not* use any of the PPP Loan proceeds to pay independent contractors. Thus, the purpose that the Independent Contractor Rule was trying to advance was not contravened.

88.     In any event, this 14-word explanation falls woefully short of a "satisfactory explanation."

89.     **Second**, pursuant to the APA, agencies may only promulgate rules after a proper notice-and-comment period. The agency "shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments," and then, "[a]fter consideration of the relevant matter presented," "shall incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(c). However, there is an exception: "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest," it may promulgate so-called interim final rules without accepting and responding to pre-promulgation comments. *Id.* § 553(b)(3)(B).

90.     The exception to the notice-and-comment procedure mentioned above must be "narrowly construed" and "only reluctantly countenanced." *State of N. J., Dep't of Env't Prot. v. U.S. Env't Prot. Agency*, 626 F.2d 1038, 1045 (D.C. Cir. 1980).

91.     The SBA has not and cannot demonstrate good cause for failing to engage in a notice-and-comment procedure with regard to the Independent Contractor Rule, at least as it is applicable to the loan forgiveness process. The Rule provides a *permanent* exclusion of independent contractor wages from loan calculations. Independent contractors are essential to the performance of American businesses. According to the Bureau of Labor Statistics, as of 2017, independent contractors comprised nearly 7% of the American workforce.[4] American small businesses depend on these workers in the same way they depend on W-2 employees to run successful and thriving businesses.

92.     Any claim of "emergency" relief justifying good cause to forego notice-and-comment procedures has no bearing on, and is not tailored to, the forgiveness process. Whereas the loan *origination* process was expeditiously implemented to combat the onset of the pandemic, the forgiveness process was simply not as urgent.

93.     For all of these reasons, and those set forth elsewhere in this Complaint, Arepet is entitled to an order declaring the Independent Contractor Rule arbitrary, capricious, and an abuse of discretion; and an order setting aside the OHA's decision and remanding with instructions to grant full forgiveness of Arepet's PPP Loan.

**VIII.**
**<u>COUNT FOUR</u>**
**Suspension of OHA Final Decision**

94.     Arepet incorporates Paragraphs 1 through 93 as if set forth verbatim herein.

---

[4]     *See* https://www.bls.gov/opub/ted/2018/independent-contractors-made-up-6-point-9-percent-of-employment-in-may-2017.htm.

95.     Pursuant to 5 U.S.C. § 705, to prevent irreparable injury to Arepet, Arepet requests that this Court stay and postpone the enforcement of OHA's final decision pending judicial review, and direct that Arepet's period of loan deferment be extended until resolution of this action.

## PRAYER

WHEREFORE, Arepet Express, LLC, respectfully prays that the Court order the following relief:

a.  Declare that the Independent Contractor Rule is not authorized by law and is contrary to law;

b.  Declare that the Independent Contractor Rule is arbitrary and capricious, exceeds Defendants' statutory authority, and violates the APA;

c.  Declare that the Independent Contractor Rule is not applicable to Arepet's PPP Loan forgiveness request;

d.  Declare that Defendants' retroactive application of the Independent Contractor Rule is contrary to law and exceeds Defendant's statutory authority;

e.  Hold unlawful and set aside the Independent Contractor Rule;

f.  Vacate and set aside the OHA's final decision denying Arepet full forgiveness of its PPP Loan, and instruct Defendants to grant full forgiveness;

g.  Permanently enjoin Defendants from enforcing the Independent Contractor Rule, including applying the Rule to deny any request for a loan forgiveness amount that includes independent contractor wages;

h.  Stay and postpone the OHA's final decision and direct that Arepet's period of loan deferment be extended until resolution of this action;

i.  Award reasonable attorneys' fees and costs to the extent permitted by law; and

j.  Grant such other relief as this Court deems just and proper.

Respectfully submitted,

**FROST BROWN TODD LLC**

By: */s/ Courtney B. Gahm-Oldham*
        Courtney B. Gahm-Oldham
        State Bar No. 24074240
        Southern District Bar No. 1127095

19

Email: coldham@fbtlaw.com
4400 Post Oak Parkway, Suite 2850
Houston, Texas 77027
Telephone: (713) 590-9300
Facsimile: (713) 590-9399
**ATTORNEY-IN-CHARGE FOR PLAINTIFF, AREPET
EXPRESS, LLC**

Of-Counsel:
Jared M. Tully\*
Email: jtully@fbtlaw.com
Mary Claire Davis\*
Email: mcdavis@fbtlaw.com
FROST BROWN TODD LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301
Telephone: (304) 345-2404
Facsimile: (304) 345-0115

*\* pro hac vice pending*

20